**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name  DANG           HUY           ___
       (Last)        (First)       (Initial)

Prisoner Number  H-40124

Institutional Address  P.O. BOX 689, YW-327L
                       Soledad, CA  93960-0689

FILED
JUL 26 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

HUY DANG
(Enter the full name of plaintiff in this action.)

vs.

B. CURRY, WARDEN (A)
BOARD OF PAROLE HEARINGS

(Enter the full name of respondent(s) or jailor in this action)

Case No. C 07 3845
(To be provided by the clerk of court)

PETITION FOR A WRIT
OF HABEAS CORPUS

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS                    - 1 -

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

    1. What sentence are you challenging in this petition?

        (a)  Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

            SUPERIOR COURT           SAN BERNARDINO
            Court                                       Location

        (b)  Case number, if known __SCR 55894__

        (c)  Date and terms of sentence __6/16/92    16 Years + Life with parole__

        (d)  Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)    Yes __X__    No ____

            Where?

            Name of Institution: __C.T.F. Soledad__

            Address: __P.O. Box 689, Soledad, CA 93960-0689__

    2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

__Penal Code §§ 209(b), 12022(a)(1)__

__Penal Code § 212.5(a) Robbery - Multiple Counts__

__Determinate Sentences for Robbery completed as of 12/29/1999__

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

    Arraignment:                                     Yes __X__    No ____

    Preliminary Hearing:                   Yes __X__    No ____

    Motion to Suppress:                    Yes ____    No ____

4. How did you plead?

    Guilty ____    Not Guilty __X__    Nolo Contendere ____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury __X__    Judge alone ____    Judge alone on a transcript ____

6. Did you testify at your trial?               Yes ____    No __X__

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment                         Yes __X__    No ____

    (b)    Preliminary hearing                Yes __X__    No ____

    (c)    Time of plea                        Yes ____    No ____

    (d)    Trial                                 Yes __X__    No ____

    (e)    Sentencing                           Yes __X__    No ____

    (f)    Appeal                               Yes __X__    No ____

    (g)    Other post-conviction proceeding    Yes ____    No ____

8. Did you appeal your conviction?           Yes ____    No ____

    (a)    If you did, to what court(s) did you appeal?

            Court of Appeal                     Yes __X__    No ____

            Year: __1994__    Result: __Denied__

            Supreme Court of California        Yes ____    No __X__

            Year: _____    Result: _____

            Any other court                      Yes ____    No __X__

            Year: _____    Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS        - 3 -

petition? **Different Issue**    Yes _____   No _X_

(c) Was there an opinion?    Yes _____   No _____

(d) Did you seek permission to file a late appeal under Rule 31(a)?

   Yes _____   No _X_

If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes _____   No _X_

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

(a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

  I.  Name of Court: __**Superior Court**_____

    Type of Proceeding: __**Writ of Habeas Corpus**_____

    Grounds raised (Be brief but specific):

    a. __Petitioner was denied his state and federal rights__

       __to due process by the Board's decision to deny__

       __parole rely on the predictive value of the nature of__

       __his offense given his positive prison program.__

    Result: __Denied (See Exh. D.)__    Date of Result: __2/5/07__

  II. Name of Court: __Appellate Court - Fourth District__

    Type of Proceeding: __**Writ of Habeas Corpus**_____

    Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1  need more space. Answer the same questions for each claim.

2  [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); <u>McCleskey v. Zant</u>,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One: <u>Petitioner was denied his state and Federal right to due process by the Board's decision to deny parole based on the predictive</u>

6  <u>value of the immutable facts of the offense despite his positive prison programming record.</u>

7  Supporting Facts: <u>Petitioner has served the minimum years required for his determinate sentence offenses as of 12/29/99 and subsequently</u>

8  <u>served the minimum seven years necessary for his interminate kidnap robbery offense.</u> (continued on page 8.)

9

10

11 Claim Two: N/A

12

13 Supporting Facts:

14

15

16

17 Claim Three: N/A

18

19 Supporting Facts:

20

21

22

23 If any of these grounds was not previously presented to any other court, state briefly which

24 grounds were not presented and why:

25  N/A

26

27

28

PET. FOR WRIT OF HAB. CORPUS         - 6 -

1  List, by name and citation only, any cases that you think are close factually to yours so that they
2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning
3  of these cases:
4  <u>See attached supporting facts and Memorandum of Points and Authorities.</u>
5  _____
6  _____

7  Do you have an attorney for this petition?                Yes_____   No _X_
8  If you do, give the name and address of your attorney:
9  _____

10  WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in
11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

13  Executed on <u>July 23, 2007</u>              _____
14           Date                                  Signature of Petitioner

20  (Rev. 6/02)

PET. FOR WRIT OF HAB. CORPUS         - 7 -

Supporting facts: (continued)

1. On September 6, 1991, Petitioner and others robbed the inhabitants of a private residence where high stakes card games were being played. No one was injured during the robbery. The defendants fled from the house believing the police were arriving. While fleeing in a strange neighborhood on foot, they came upon a man and his girlfriend next to their vehicle. After ordering the girlfriend to remain at the residence, they ordered the male to drive them away from the area. After driving three blocks, Petitioner told the driver to stop and leave the car. The victim was released unharmed after a very short distance. This was not an intended kidnap, but one occurring in the spur of the moment. Petitioner and his partner drove two more blocks, were stopped by the police, and arrested. (See Exhibit A, Petitioner's June 1, 2006 parole hearing transcript and Exhibit B, the Custody Counselor prepared Life Prisoner Evaluation Report, incorporated by reference.)

2. Petitioner has no criminal history other than the instant offense(s). (Exh. A, p. 36.)

3. During his imprisonment he received only one CDC- 15, in 1993, and has remained disciplinary free since – for the past 13+ years.

4. Petitioner earned his High School G.E.D. on September 3, 2003. He has since worked as a wing porter, and was on the vocational waiting lists at Correctional Training Facility – Central Facility. He now attends a CDC Vocational course as of 2007.

5. Petitioner received letters of support, including residence and employment offers from family members. (Exhibit A, pp. 39-46.) He as an active U.S. I.N.S. hold, but has parole plans and residence offers from family members in the United States and from his Mother who lives in Viet Nam. He lived in Viet Nam until he was 13 years old.

6. The psychologist found if released to the community his violence potential is estimated as probably no greater than the average citizen and his prognosis for community living is good. The psychologist noted that in the 15 years passed since this offense Petitioner has learned to resist negative pressures, to appreciate consequences, and to distinguish right from wrong. Therefore, the same risk factors/precursors to violence that applied at age 19 no longer apply at the age of 34. The psychologist noted he expresses an appropriate degree of insight and regret. (See Exhibit C, CDC Psychological Evaluation of Petitioner prepared for the Board, dated May 8, 2006, incorporated by reference.)

1    7. The Board's description of the life term crime as involving multiple victims is incorrect. The
2  life crime involved only one victim, the movement was of very short duration. No harm befell the victim.
3  That constitutes the least serious Cal. Code Regs., tit. 15, § 2285(c) kidnap for robbery type offense, one
4  only requiring an 8-10-12 year term. The Board's characterization of the robbery as a home invasion is
5  purely for punitive purposes. Petitioner and the others attempted to rob what they believed to be a high
6  stakes poker game, being held in a private home.
7    8. The Board's finding the motive was trivial is contrary to the evidence. Petitioner and others
8  were (they believed) fleeing the police after a robbery, on foot. They happened upon a car and a driver,
9  and saw a chance to leave the area. That is not a trivial motive.
10    9. The Board's accusation that 15 people were held hostage (Exhibit A, p. 81:4-5) is a gross
11  misrepresentation of that robbery. There was no hostage taking.
12    10. The Board's claim two people were kidnapped (Exhibit A, p. 81: 10) is simply wrong, and an
13  attempt to inflate the crime.
14    11. The Board's characterization of Petitioner's leaving Viet Nam as an unstable social history
15  (Exhibit A, p. 81: 14-18) is contrary to the Rosenkrantz, 29 Cal.4th rule to use the regulation as specified
16  – therefore the Board failed to show the Petitioner has a Cal. Code Regs., tit. 15, § 2287(c)(3) history of
17  unstable or tumultuous relationships with others. His Mother sending him to the United States for a
18  chance at an economically better life does not constitute a tumultuous relationship, nor does his failing to
19  follow his Aunt's proper advice.
20    12. The Board's (Exhibit A, P. 90:5-7) finding that the victim was abused and the offense was
21  carried out in a manner which demonstrated an exceptional disregard for human suffering is clearly
22  contrary to the facts in the record and contrary to governing law. A Cal. Code Regs., tit. 15, §2281
23  (c)(1)(D) finding of exceptionally callous disregard for human suffering requires the intent and act of
24  inflicting prolonged torturous pain, simply not present in this case. (See e.g. In re Rosenkrantz (2000) 80
25  Cal.App.4th 409, 419-420; In re Ernest Smith (2003) 114 Cal.App.4th 343, 366.) If the kidnapping victim
26  was assaulted/abused by being struck with a gun, Petitioner had no such weapon in his possession
27    13. The unaddressed and unanswered question is whether the factors of this crime in this case have
28  predictive value after 15 years demonstrating Petitioner is currently a threat to society and will repeat

crimes. The consensus outside of the Board panel is <u>no</u>. The Board provides only unsupported (or inaccurate) declarative findings for its position, rendering their unsupported statements arbitrary. After 15 years Petitioner's offense has no predictive value. (See e.g. <u>In re Lee</u> (2006) 143 Cal.App.4th 1400, 1408.)

14. The State court denials in this matter are all unreasoned, summary style decisions (See Exhibit D) requiring independent review by this court.

PRAYER

Petitioner respectfully requests this court:

1. Issue an Order to Show Cause; and

2. After briefing by the parties find no reliable evidence supports a finding Petitioner would currently pose a threat to public safety if released due to his long term positive record in prison, the minimal nature of his kidnap robbery offense; and after more than 15 years of imprisonment, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his crime is nil; therefore,

3. Order the State of California/Board of Parole Hearings to set Petitioner's term and immediately release him into the custody of the USINS.

4. Order an evidentiary hearing if required.

5. Grant other relief as necessary,

Date: July 23, 2007

Petitioner, In Pro Per

MEMORANDUM OF POINTS AND AUTHORITIES

STANDARD OF REVIEW

Under the AEDPA, if a federal habeas court finds that the state failed to correctly identify, extend, or apply the appropriate federal law, as determined by the United States Supreme Court, or made an unreasonable determination of the facts in light of those presented, it may grant habeas relief. (Taylor v. Maddox (9th Cir. 2004) 366 F.3d 992, 999-1001, relying on Lockyer v. Andrade (2003) 538 U.S. 63, 75.) Relief includes the conditional or unconditional discharge from custody. (McQuillion v. Duncan (9th Cir. 2003) 342 F.2d 1012, 1015-1016; Masoner v. State (C.D..Cal. 2004) WL1080177, 1-2.)

If the state's summary denials, which are denials on the merits, do not provide a federal reviewing court with sufficient reasoning to determine whether the state's determination should be accorded deference under 28 U.S.C. section 2254, subd. (d), plenary review is appropriate. (Lynn v. Cambra (9th Cir. 2002) 311 F.3d 928, 954, 960, amended; Shackelford v. Hubbard (9th Cir. 2000) 234 F.3d 1072, 1079, n.2.)

### I. PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE RELEASE.

It is well established that all indeterminately sentenced prisoners possess a federally protected liberty interest. See McQuillion v. Duncan 9th Cir. 2002) 306 F.3d 895, 901-902; Biggs v. Terhune (9th Cir. 2003) 334 F.d 910, 914-915, relying on Greenholtz v. Inmates of Nebraska (1979) 441 U.S. 1); Board of Pardons v. Allen (1987) 482 U.S. 369, 377-378, clearly reasoning that the similar structure and phrasing of California's parole statute (Penal Code § 3041, subd. (b)) when compared to those of Nebraska and Montana produce the same result in this state - a federally protected liberty interest. A liberty interest, the Biggs court held on pp. 914-915, to arise "upon the incarceration of the inmate." Also see Sass v. California Parole Board (9th Cir. 2006) 461 F.3d 1123, 1127-1128.

### II. DENIAL OF PAROLE BASED ON THE IMMUTABLE CIRCUMSTANCES OF THE COMMITMENT OFFENSE, AFTER 15+ YEARS, DEPRIVES THIS PRISONER OF DUE PROCESS.

State and federal courts are now repeatedly holding that even if offense circumstances are considered under regulatory law to support parole denial, due process may preclude the crime alone

justifying repeated parole denials, after the passage of a lengthy period of years. (See e.g. In re Smith (2003) 114 Cal.App.4th 343, 372; Biggs v. Terhune (9th Cir 2003) 334 F.3d 910-916-917; In re Scott (2005) 34 Cal.Rptr.3d 905, 919-920; In re Lee (2006) 49 Cal.Rptr.3d 931; In re Elkins (2006) 50 Cal.Rptr. 34 503; Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063.) Disregarding that standard, the Board denied Petitioner parole based on the unchanging factors of his offense. A finding that ignores or improperly discounts Petitioner having remained free of crime, since 1990, his 13 years of disciplinary offense history during his imprisonment, his positive prison work and self-help programming record, his acceptance of responsibility and his stated remorse for the resulting loss of life and its impact on others.

In People v. Seel (2004) 34 Cal.4th 535, 546, the State Supreme Court held, "The degree of criminal culpability the legislature chooses to associate with particular, factual distinct conduct has significant implications both for a defendant's very liberty and the heightened stigma associated with an offense the legislature has selected worthy of greater punishment. (Apprendi v. New Jersey (2000) 503 U.S. 466, 495)." The jury in this case found petitioner's culpability to be that of a kidnap-robbery resulting from the two block movement, without harm, of the victim, but not one resulting from the intentional, prolonged infliction of pain. The Board's heightening of Petitioner's culpability by defining his offense as including hostage taking and as exceptionally cruel and callous, therefore with the implied inflicting of prolonged tortuous pain on the victim, and requiring he serve a prison term allocated solely for that type of crime runs counter to this legislative policy noted by the State Supreme Court.

In this case, the Board relied on the alleged predictive value of Petitioner's offense as a basis for parole denial. Assessing a similar chronological situation, for a far more serious first-degree murder and associated crimes than the offense committed by Petitioner, a federal district court judge reasoned that:

> Whether the facts of the crime of conviction, or other unchanged criteria, affect the parole eligibility decision can only be predicated on the "predictive value" of the unchanged circumstance. Otherwise, if the unchanged circumstances per se can be used to deny parole eligibility, sentencing is taken out of the hands of the judge and totally reposited in the hands of the BPT. That is, parole eligibility could be indefinitely and for ever delayed based in the nature of the crime even though the sentence given set forth the possibility of parole - a sentence given with the facts of the crime fresh in the minds of the judge. While it would not be a constitutional violation to forgo parole altogether for certain crimes, what the state cannot do is have a sham system where the judge promises the possibility of parole, but because of the nature of the crime, the BPT effectively deletes such from the system. Nor can a parole system, where parole is mandated to be determined on someone's

12

future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners' revulsion toward the crime itself, or some other unchanged circumstances must indicate a present danger to the community if released, and this can only be assessed not in a vacuum, but counterpoised against a backdrop of prison events. (Relying on Bair v. Folsom State Prison, 2005 WL 2219220 * 12, n. 3 (E.Cal. 2005) report and recommendation adopted by 2005 WL 3081634 (E.D. Ca. 2005).

Given the factual circumstances of Petitioner participation in this case, the repeated reliance on the unchanging circumstances of Petitioner's crime and the defacto characterizing it as one of a higher (cruel type) culpability than that factually found by the jury violates Petitioner's due process. (See Martin v. Marshall (N.D. Cal. 2006) 431 F.Supp.2d 1038.) The continued reliance by the Board on unchanging factors makes a sham of the state's parole system. It amounts to an arbitrary denial of Petitioner's liberty interest by converting his sentence from one of 16 years plus life with possibility of parole to that for a far more serious offense.

By defining Petitioner's culpability as higher than found by the jury, and by continuing to rely on those factors now 17 years after the offense as an indicator of present dangerousness, given Petitioner being free of violence and criminal acts while in prison, the Board in this case violated due process, The ability to predict Petitioner's future dangerousness based on the circumstances of his 1990 commitment offense is nil. See In re Scott, supra, 133 Cal.App.4th at 595, 34 Cal.3d 905:

> "The commitment offense can negate suitability only if the circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time." (Id., at 920) "Therefore, an unsuitability determination must be predicted on 'some evidence that the particular circumstances of [the prisoner's] crime - circumstances beyond the minimum elements of this conviction - indicate exceptional callousness and cruelty with trivial provocation, and thus suggest he remain a danger to public safety." (In re Dannenberg, supra, 34Cal.4th at 1098.)" (Id., at 922)"

Petitioner's post-imprisonment behavior and work record provides absolutely no reliable evidence of his re-offending. Correspondingly, the 17 year period that has passed since the offense occurred has rendered nil the predictive value of its circumstances, rendering the Board's decision to deny parole arbitrary. (In re Lee, supra, 49 Cal.Rptr.3d at 939.)

### III.   ABUSE OF THE "MINIMALLY NECESSARY" STANDARD DEPRIVES APPEARING PRISONERS OF THEIR FEDERALLY PROTECTED LIBERTY INTEREST BY EVISCERATING THE "SOME EVIDENCE" STANDARD.

13

Since California's parole scheme gives rise to a cognizable liberty interest in release on parole (Biggs v. Terhune, supra, at 914-915) the requirements of due process require "some evidence" which has an indicia of reliability to support the parole denial decision. (Ibid.) As a federal district court judge reasoned, Biggs was serving a sentence of twenty-five to life following a sentence for a 1985 first-degree murder conviction. He challenged the 1999 Board decision finding him unsuitable for parole despite his record as a model prisoner. (Id., at 913.) The court upheld the use of his commitment offense in that case as it involved the murder of a witness, finding that the murder was perpetrated by beating the victim to death using multiple blows from a baseball bat, was carried out in a manner exhibiting a callous disregard for the life and suffering of another, and that petitioner Biggs could benefit from therapy. (Ibid.) However, the court cautioned that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." (Id. at 917.) A standard denoting that the parole board should determine who will be a danger to the community by looking at the commitment offense in terms of its predictive value. Therefore the more violent, thoughtless, and callous the criminal acts of the prisoner, the more likely it can be said that the perpetrator would exhibit those tendencies again. However, aside from punishment, the parole executive's role is to determine when these presumptions have been confirmed or rebutted. The Biggs court appears to agree with In re Rosenkrantz (2002) Cal.4th 616, 683, stating that in order for the Board to put weight on the exceptional nature of the crime, it had to be "particularly egregious." In 2005, the State Supreme Court referenced that term as simply "that the violence of the inmate's crime must be more than minimally necessary to convict him of the offense for which he is confined." (In re Dannenberg, 34 Cal.4th 1061, 1095, 23 Cal.Rptr.3d 417, 440 (2005).)

The minimal elements of a kidnap robbery are simply that a person is moved against his will. And that is what happened in this case. Two persons having an automobile were approached in front of their house by Petitioner and a co-partner. One person was immediately released. The second was required to drive the two crime partners out of the neighborhood. They were fleeing the scene of an essentially unsuccessful robbery – on foot in a strange neighborhood. The kidnapped party was released unharmed two blocks from his house. An offense sustained by certainly no more than the minimum necessary. By

14

1  declaring his acts to include hostage taking and having been cruel and callous, the Board improperly
2  elevated Petitioner's acts to those more than the minimum necessary and denied paroled.
3       Now seem to realizing the potentially arbitrary features of the minimum necessary standard, the
4  California Courts have defined it to require evidence of cruelty with trivial provocation. See In re Weider
5  (2006) 145 Cal.App.4th 570, 52 Cal.Rptr.3d 147, 160, making this holding, effectively noting cruelty is
6  synonymous with the exceptional callousness, i.e. torturous intent, not present in this case. Also see In re
7  Elkins (2006) 144 Cal.App.4th 570, 50 Cal.Rptr. 503, where the court found that after 26 years the
8  predictive value of the immutable facts of petitioner Elkins first-degree murder offense may be very-
9  questionable (Id. at 520.) Elkins intended to, and did, rob the sleeping victim. When that victim awoke
10 during the robbery, petitioner Elkins used a baseball bat to repeatedly struck the victim in the head. As the
11 victim kept moving, Elkins kept hitting him. (Id. at 518.) Elkins then took the victim's money, wallet, and
12 drugs. (Id. At 520.) The next morning Elkins drove the body to Donner's Pass and dumped it down a
13 steep grade. He also stole other items from the victim's property and fled the state. (Id. At 520.) The court
14 found for first-degree murders that after 20+ years the predictive value of these acts was nil (Id. At 521)
15 given the low probability of that petitioner re-offending. While this Petitioner's post-imprisonment record
16 is as satisfactory as that of Elkins given his culpability, his criminal acts pale in comparison to those of
17 Elkins. He has never participated in a similar act of violence. His 17 years of imprisonment with a 13 year
18 discipline free record equates to the situation in In re Lee, supra, an offense involving multiple life terms
19 for second degree murder and attempted murder.
20      As a federal court judge noted, while Biggs does not explicitly state when reliance on an
21 unchanging factor would violate due process, i.e. when such a factor no longer has predictive value, this
22 determination is made on a case by case basis[1]. Therefore, repeated application of the severity of the
23 crime factor will violate due process when the crime for which incarceration was required grows more
24 remote. (See e.g. Martin v. Marshall, (N.D. Cal. 2006) 341 F.Supp.2d 1038, 1042; Rosenkrantz v.
25 Marshall, (C.D. 2006) 444 F.Supp.2d 1063. A time which will vary given the severity of a prisoner's
26 offense action. In this case, criminal actions, while serious, that were of a short duration and caused no

---

28 [1] In re Rosenkrantz (2002) 29 Cal.4th at 683, which Dannenberg at 1094-1095 cites approvingly, held case-by-case parole denial decisions cannot be used to override the requirement that parole should be normally granted. A Rosenkrantz holding repeatedly ignored by the Board and Governor.

15

harm to the victim.

### IV. POST-TRIAL INDEPENDENT FACT FINDING BY THE BOARD VIOLATES AN APPEARING INMATE'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO TRIAL BY JURY.

The California parole executive's primary function in the indeterminate sentence arena is to determine the length of the penalty, the prison term, affected prisoners will serve for committing their crime, whether it does so by granting parole and setting a term, or by denying parole and effectively lengthening that term. (See Penal Code § 3041(b), and In re Sena (2003) 94 Cal.App.4th 836, 839, relying on United States v. Paskow (9th Cir. 1996) 11 F.3d 873, 879, recognizing that "[a] petition for a writ of habeas corpus [such as this one] attacking parole denial is a challenge to the length of sentence" as "parole eligibility is considered part of any sentence imposed.") Addressing the legal process that determines the length of a defendant's sentence, the United States Supreme Court in Blakely v. Washington (2005) 542 U.S. 296, 124 S.Ct 2531, 154 L.Ed2d 403, held that use of post-trial or post- plea fact finding during that determination violates a prisoner's Sixth Amendment right to trial by jury, specifically noting these restrictions apply in the indeterminate sentencing environment when penalty length determinations rest on case facts:

> "[T]he Sixth Amendment... limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing [itself] does not do so. It increases judicial discretion to be sure, but not at the expense of the jury's traditional function of finding facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial fact finding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal **right to a lesser sentence** – and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he ~s risking 40 years in jail. In a system that punishes burglary with a 10 year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10year-sentence-and-by-reason of the Sixth Amendment the facts bearing upon that entitlement must be found by jury." (Id., 124 S.Ct. at 2441, 154 L.Ed.2d at 417.) (Emphasis added.)

Clear connotation that offense facts found by a jury confer on indeterminately sentenced prisoners a right to benefit from a lesser sentence, and an entitlement to its accompanying lesser punishment, of which they cannot be deprived by post-trial fact-finding. Rules directly applicable to this matter, as California statutory and regulatory law not only provides sentencing matrices containing three part

1  punishment terms for its indeterminately sentenced prisoners correlated with offense type and degree and
2  resulting length of sentence, they mandate a term selection process that relies solely on the facts of the
3  offense. (See In re Morrall (2002) 102 Cal.App.4th 280, 288-289, 292; In re Dannenberg, (2005) 34
4  Cal.4th 1061, fn. 7 at 1070; Cal. Code Regs., tit, 15 § 2403.)

   Not only have the courts held that the punishment terms and parole suitability determination for California's indeterminately sentenced prisoners result from the individual facts of their crime (In re Dannenberg, supra, 34 Cal.4th 1061), they have also recognized California's parole authority functions in a quasi-judicial capacity as an arm of the sentencing court when making parole denial/sentence length determinations. (See Hornung v. Superior Court, (2000) 81 Cal.App.4th 1098, 1099; Sellers v. Procunier (9th Cir. 1981) 641 F.2d 1295, 1304; Obremski v. Maass, 905 F.2d 281.) A quasi-judicial process whose determinations effect a prisoner's sentence or penalty length, thereby requiring they conform to their decision making process to Blakely court guidelines requiring that any relied upon offense facts have been found by a jury or admitted at plea, and nothing more. Any attempt by the state parole authority (Board or Governor) to conduct independent fact-finding would violate an appearing prisoner's due process. (Id., at 124 S.Ct at 2541, 154 L.Ed.2d 403.)

   In the instant matter, the Board prevented Petitioner from benefiting from his trial court imposed "lesser sentence" by independently finding the facts of his kidnap-robbery involves multiple victims, hostage taking, cruelty such as torturous acts, etc., requiring he serve a sentence length solely established for a more serious conviction. A finding certainly contrary to that of the trial court and one certainly made post-conviction in violation of the tenets of Blakeley v. Washington, supra.

**V.    THE DEGREE OF THREAT TO SOCIETY POSED BY PETITIONER WAS FIXED BY THE SENTENCING COURT BASED ON THE COMMITMENT OFFENSE AND AN ASSESSMENT OF THE PROPENSITY OF AN OFFENDER,**

   As noted in Penal Code § 3041(B), the state parole authority is required to comply with any "sentencing information" relevant to the setting of a parole release date. This includes Judicial Council sentencing information attached to California Rules of Court, Rule 4.421, in the form of their Advisory Committee comments, which clearly notes that trial court "sentencing decisions must take into account 'the nature and degree of the offense and/or the offender, with particular regard to the degree of danger

both present to society.' [Citations]" The Judicial Council then advised that, "For determination of sentences, justice generally requires ... that there be taken into account the circumstances of the offense together with the propensities of the offender." (Pennsylvania v. Ashe, (1937) 302 U.S. 51, 55 [58 S.Ct. 59], quoted with approval in Gregg v. George, (1976) 428 U.S. 135, 189, [96 S.Ct. 2909, 2932].) Sentencing rules and informational guidelines which clearly denote that at sentencing, the court determined the degree of the threat to society posed by Petitioner equated to the kidnap-robbery of a single individual moved only 2 blocks.

## CONCLUSION

The Board violated Petitioner's due process by denying him parole based on the unchanging factors of his offense, despite the facts of his conviction meeting the minimally necessary standard, the evidence of his rehabilitation, his exemplary prison behavior, and the 16 year period since the crime was committed having rendered nil the predictive value of its facts. A parole denial of such a nature it violated Petitioner's constitutional rights to due process under the 5th and 14th Amendments of the United States Constitution and his 6th Amendment right to trial by jury. A decision that was clearly unreasonable in light of the facts and contrary paramount to U.S. Supreme Court law requiring a prison term length based on a prisoner's propensities. Given the facts of this matter, Petitioner therefore respectfully requests this Court order the Board find him parole suitable and that he be released onto parole, while ordering his parole period be reduced by the number of years of imprisonment he has served in excess of the uniform term specified for the facts of his offense.