EXHIBIT B

RU1310
CFYW 327L

## LIFE PRISONER EVALUATION REPORT
## INITIAL PAROLE CONSIDERATION HEARING
## NOVEMBER 2005 CALENDAR

**DANG, HUY KHANH**                                                           **H40124**

I.   **COMMITMENT FACTORS:**

A.   **Life Crime:** Ct. 16, Kidnap for Robbery, PC 209(b), with Use of a Firearm, PC 12022(a)(1). Ct. 1, Robbery 1st, PC 212.5(a), Armed, PC 12022(a) (1). Cts. 3 through 10, Robbery 1st, PC 212.5(a). San Bernardino County Case #SCR55894. Sentence: Life plus 16 years. MEPD: 12/30/06. Victim: Unidentified in P.O.R., age unknown. Received by CDC on 7/8/92.

1.   **Summary of Crime:** On September 6, 1991, Dang's crime partner approached the victim's car and pulled out a gun and stated "Take us out of here, or I'll kill you." The victim stated he was hit in the left eye with the gun. He was told to "Drive faster, or I'll kill you. Take us to the freeway." When they reached a location of Fifth Street and Del Rosa Avenue in San Bernardino, the victim was told to stop the car and get out. They drove off in his car. On September 7, 1991, victim's stated that five Oriental males approached them in the driveway of a residence. The males put a gun to their heads and walked them to the residence. They made everyone lie down and took their money and jewelry at gunpoint. On September 7, 1991 at 12:06 a.m. a Deputy was dispatched to the area of Cypress Avenue and Grape Street in reference to shots being fired. The witness reported he saw two males running eastbound on Cypress toward Victoria and another male running westbound on Cypress. The witness got in his car and followed the two males he saw running. A Deputy detained two Oriental males and placed them under arrest. Several of the victim's identified the men that robbed them. A total of five males were arrested. Information obtained from P.O.R. pages 1 through 4.

2.   **Prisoner's Version:** On the night of September 6, 1991, Dang and three other males robbed the victim's at the residence on 9th Street. Somebody yelled "the police are coming" so they got scared and ran from the residence. One of the males forced the victim at gunpoint to drive them away from the scene. Dang states that the facts in the P.O.R. are not correct. He did not hit the victim with a gun; in fact he tried to get his crime partner to let the victim go. They let the victim go and drove the car about two blocks when they were stopped by police for a traffic violation. They were subsequently arrested for the robbery at 9th Street.

INMATE

COPY TO INMATE ON
7-29-05

LIFE PRISONER EVALUATIC  EPORT
INITIAL PAROLE CONSIDERA ION HEARING
NOVEMBER 2005 CALENDAR

3. **Aggravating/Mitigating Circumstances:**

    a. **Aggravating Factors:**

- Circumstances of the crime created potential for serious injury to others.
- There were multiple victims.
- Use of a weapon.

    b. **Mitigating Factors:**

- The prisoner has no known prior criminal behavior.

**B. Multiple Crime(s):** None.

    1. **Summary of Crime:** None.

    2. **Prisoner's Version:** None.

## II. PRECONVICTION FACTORS:

**A. Juvenile Record:** None.

**B. Adult Convictions and Arrests:** None.

**C. Personal Factors:** Dang was born in Vietnam on 4/27/72. About five years prior to the crime he left Vietnam and lived with his father in Hawaii for about one month. He then came to California to live with his aunt. He came to California so he could attend school. He worked part-time in a Montebello City Parks and Recreation work program. He also occasionally performed job duties at City Hall. He denies any past drug or alcohol abuse.

## III. POSTCONVICTION FACTORS:

**A. Special Programming/Accommodations:** None.

**B. Custody History:**

| | |
|---|---|
| 07/08/92 | Received at RCC-CIM. |
| 08/20/92 | Transferred to New Folsom. |
| 08/21/92 | Received at Old Folsom. |
| 03/31/93 | Transferred to LAC. |
| 04/22/94 | Received at CIM while out to Court. |

06/08/94      Returned to LAC.
01/02/97      Transferred to PVSP.
10/29/98      Transferred to CTF.

During his incarceration Dang has been assigned to ABE I & II, Consumer Electronics, Janitor, ABE III, Barber, GED Class, Apprentice Cook and Wing Porter. He received his GED on 9/30/03.

**C.**  **Therapy and Self-Help Activities:**  Dang received a Certificate of Achievement from Alcoholics and Narcotics Anonymous for excellent attendance. He also completed courses in Hepatitis, HIV/AIDS, Tuberculosis, Sexually Transmitted Infections and the IMPACT workshop.

**D.**  **Disciplinary History:**  Dang has received seven CDC 128A's and one CDC 115. See disciplinary sheet for details.

**E.**  **Other:**  A Documentation Hearing was held on 1/16/03. The BPT recommended:

1. Remain disciplinary free.
2. Upgrade vocationally as available.
3. Cooperate with mental health staff for evaluation prior to Initial Parole Hearing.
4. Complete GED exam.

Dang has attempted to meet the Board recommendations.


**IV.**  **FUTURE PLANS:**

**A.**  **Residence:**  Dang plans to reside with his brother, James Dang, 645 E. 1st Street, Tustin, California (714) 730-3611.

**B.**  **Employment:**  Dang plans to work for is brother, James Dang, at his Beauty Salon. He will sweep the floors and wash hair until he gets his license to cut hair.

**C.**  **Assessment:**  Dang has letters from family in his file offering shelter and financial support.


**V.**  **USINS STATUS:**  Active hold #A40386796.


**VI.**  **SUMMARY:**


DANG, HUY KHANH          H40124                    CTF-SOLEDAD              **NOV/2005**

LIFE PRISONER EVALUATIC    EPORT
INITIAL PAROLE CONSIDERA ı ON HEARING
NOVEMBER 2005 CALENDAR

A.    Prior to release, Dang could benefit by remaining disciplinary free, participating in a self-help program and upgrading vocationally.

B.    This Board Report is based upon a person interview, incidental contact in the housing unit and a through review of the Central File.

C.    Dang was afforded an opportunity to review the Central File. See CDC 128B dated 7/6/05.

D.    No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

LIFE PRISONER EVALUATR REPORT
INITIAL PAROLE CONSIDERATION HEARING
NOVEMBER 2005 CALENDAR


_M. Rubio_  7-19-05
M. Rubio,                        Date
Correctional Counselor I


_Peabody_  7/19/05
J.L. Safeli,                      Date
Correctional Counselor II


_Clancy_  7-19-05
J.L. Clancy,                     Date
Facility Captain


_Levorse, C&PR_  7-19-05
D. S. Levorse,                   Date
Classification and Parole Representative


DANG, HUY KHANH          H40124                  CTF-SOLEDAD          **NOV/2005**

BOARD OF PRISON TERMS                                                                    STATE

OF CALIFORNIA.

## LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| Jan 2003 to Dec 2003 | | | **PLACEMENT**: CTF. <br> **CUSTODY**:  Med A. <br> **VOC. TRAINING**:  None. <br> **ACADEMICS**:   Received a GED on 9/30/03 (See Certificate). <br> **WORK RECORD**:  Assigned as a porter (see CDC 101 1/13/03). <br> **GROUP ACTIVITIES**:  None. <br> **PSYCH. TREATMENT**:  None. <br> **PRISON BEHAVIOR**:  Remained disciplinary free. <br> **OTHER**:  None. |

*M. Rubio* CCI                                          DATE  7-19-05

DANG, HUY KHANH            H40124                    CTF-SOLEDAD            NOV/2005

BPT 1004 (REV 7/86)

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| Jan 2004 to Dec 2004 | | | **PLACEMENT**: CTF.<br>**CUSTODY**: Med A.<br>**VOC. TRAINING**: None.<br>**ACADEMICS**: Completed courses in Hepatitis, HIV/AIDS, Tuberculosis, & Sexually Transmitted Infections (see CDC 128B's 6/17/04, 6/23/04, 10/26/04 & Certificates).<br>**WORK RECORD**: Assigned as a porter (see CDC 101 12/17/04).<br>**GROUP ACTIVITIES**: Completed a 13-week IMPACT workshop (see CDC 128B 6/8/04).<br>**PSYCH. TREATMENT**: None.<br>**PRISON BEHAVIOR**: Remained disciplinary free.<br>**OTHER**: None. |

ORDER:

☐ BPT date advanced by     months.        ☐ BPT date affirmed without change.
☐ PBR date advanced by     months.        ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

☐ Previously imposed conditions affirmed.
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

| DANG, HUY KHANH | H40124 | CTF-SOLEDAD | NOV/2005 |
|---|---|---|---|

BOARD OF PRISON TERMS                                                                                    STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| Jan 2005 to Present | | | **PLACEMENT**: CTF. <br> **CUSTODY**: Med A. <br> **VOC. TRAINING**: None. <br> **ACADEMICS**: None. <br> **WORK RECORD**: Assigned as a porter. <br> **GROUP ACTIVITIES**: None. <br> **PSYCH. TREATMENT**: None. <br> **PRISON BEHAVIOR**: Remained disciplinary free. <br> **OTHER**: None. |

ORDER:

☐ BPT date advanced by ___ months.
☐ PBR date advanced by ___ months.

☐ BPT date affirmed without change.
☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

☐ Previously imposed conditions affirmed.
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

| DANG, HUY KHANH | H40124 | CTF-SOLEDAD | NOV/2005 |

ARD OF PRISON TERMS                                                                                     STATE OF CALIFORNIA

## DISCIPLINARY SHEET

### CDC 128A's:

| | | |
|---|---|---|
| 09/19/92 | FOL | Sleeping in Class. |
| 10/17/92 | FOL | Absent from Class. |
| 03/12/93 | FOL | Late to Class. |
| 03/01/94 | LAC | Delaying lock-up. |
| 03/17/97 | PVSP | Absent from class. |
| 05/08/97 | PVSP | Absent from class. |
| 06/12/98 | PVSP | Absent from class. |

### CDC 115's:

| | | | |
|---|---|---|---|
| 07/26/93 | LAC | 3005(b) | Disobeyed a Direct Order. **Guilty:** Assessed 5 days CTQ. |

DANG, HUY DHANH          H40124                    CTF-SOLEDAD              NOV/2005

EXHIBIT C

INMATE COPY

**PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PAROLE HEARINGS**
**REVISED SEPTEMBER 1998**
**PAROLE CONSIDERATION HEARING**
**MAY 2006 LIFE-TERM INMATE CALENDAR**

**CORRECTIONAL TRAINING FACILITY, SOLEDAD**
**MAY 8, 2006**

**PSYCHOSOCIAL ASSESSMENT:**

**I.    IDENTIFYING INFORMATION:**

This is the first psychological evaluation for the Board of Parole Hearings on inmate Huy Khanh Dang, CDC number H-40124, a 34-year-old, single, Asian, Buddhist male, born on 04/27/72.  He says he has no unusual characteristics, nicknames, or aliases.

**II.    DEVELOPMENTAL HISTORY:**

He denied any history of prenatal or perinatal insults or any birth defects.  He is not aware of any abnormalities in his developmental milestones for speech and language development.  He denies any abnormalities in child habits, peer interactions, or socialization as a child.  He denies a history of cruelty to animals, enuresis, or arson while growing up.  He denies any significant childhood medical history.  He denies any history of physical or sexual abuse as either a perpetrator or victim during his child/teen years.

He was born and raised in Vietnam, and came to the United States at the age of 15.  Since he was born in 1972, this means that he grew up under the communist regime that seized power in Vietnam in 1975.  However, he states that he does not remember any problems or persecutions from the communist government while he was growing up.  He does indicate that his father served in the Army of the Republic of Vietnam (South Vietnam) and did have to leave the country in 1975 to escape retaliation.  However, he states that the government did not retaliate against him or the other family members who remained in Vietnam.

**III.    EDUCATIONAL HISTORY:**

He completed the 11th grade in the United States before dropping out.  He states that on 09/30/03, he obtained his GED.  He states that his most recent GPL in English, which is not his first language, was 9.6.  He denies any learning disabilities or behavioral problems while he was in school as a child/teen.

*DANG, HUY KHANH*
*CDC NUMBER: H-40124*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE TWO*

IV.     **FAMILY HISTORY:**

He states that his father works as a restaurant owner in Hawaii. His mother is still living in Vietnam, and apparently manages a store. He has two brothers and three sisters. He denies that anyone in the family had any problems with alcohol/drugs, domestic violence, mental illness, or significant medical problems while he was growing up. He states that, when he was a teenager, one brother had some legal problems in Hawaii, which landed him on probation. However, he denies that any of his siblings have any current legal problems. He states that he always had a good relationship with his parents and his siblings.

V.     **PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:**

He reports a heterosexual sexual orientation and normal sexual development. He denies any history of sexual disorder or dysfunction, or a history of high-risk sexual behavior.

VI.     **MARITAL HISTORY:**

He has never been married. He states that, prior to his incarceration, he did have a girlfriend. He has no children. He does not have any current romantic relationship via correspondence.

VII.     **MILITARY HISTORY:**

He states that he has never served in the military of any country.

VIII.     **EMPLOYMENT/INCOME HISTORY:**

He states that as a teenager, he did some part-time summer work at the Montebello City Parks and Recreation work program. He states that after his incarceration, he worked as a cook for many years, and has been a porter since 2001. He states that he is currently on multiple vocational waiting lists to improve and upgrade his vocational skills.

*DANG, HUY KHANH*
*CDC NUMBER: H-40124*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE THREE*

IX.    ***SUBSTANCE ABUSE HISTORY:***

He denies any history of ever using illicit drugs or any abuse of alcohol. He states
that at one time he was attending Alcoholics Anonymous and Narcotics
Anonymous. He stopped because he had nothing in common with the other
inmates who attend those programs and who talk about their problems dealing
with substances/alcohol.

X.    ***PSYCHIATRIC AND MEDICAL HISTORY:***

This inmate does not have a history of any mental health disorder or mental health
treatment. He denies any inpatient or outpatient psychiatric treatment, any
significant depressions, any manic episodes, any hallucinations, any suicide
attempts, any panic attacks, or other emotional disorder. He denies any history of
head injuries, seizures, or other neurobehavioral conditions. He states that he did
have bilateral arthroscopic knee surgery from which he still has some residual
discomfort. He states that he also has some stomach irritation.

He is currently being Motrin, Tylenol, and Prilosec.

XI.    ***PLANS IF GRANTED RELEASE:***

He has a USINS hold for deportation to Vietnam. He states if he gets deported to
Vietnam, he will live with his mother, who will provide him with a place to stay
and a job at the store that she manages. He states that if he is permitted to remain
in California, he has a brother in Orange County who owns a beauty salon who
has offered to provide him with a place to stay and work. He says that, in that
case, he would try to get a license as a barber and work for his brother. He
anticipates no problems with compliance with conditions of parole. He does not
foresee getting back into the same teenage peer relationships that led to his
involvement in the commitment offense.

From his statements, his plans for parole appear viable. He has supportive family
relationships. Therefore, his prognosis for community living is estimated to be
good.

*DANG, HUY KHANH*
*CDC NUMBER: H-40124*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE FOUR*

## CLINICAL ASSESSMENT

### XII.    CURRENT MENTAL STATUS/TREATMENT NEEDS:

Inmate Dang presents as an appropriately groomed, cooperative man who appears his stated age. There are no psychomotor abnormalities. No abnormal involuntary movements are discerned. Eye contact is good. Facial kinetics are expressive. His receptive language comprehension for English is grossly intact. His speech is relatively prompt and spontaneous, of normal tone and tempo. The process of thought as reflected in speech is generally organized and coherent; he is able to adequately express himself in English. He denies any hallucinations or other pseudoperceptual phenomena. He denies any current suicidal/homicidal ideation. His affect as expressed in speech and demeanor is appropriate to the situation.

### CURRENT DIAGNOSTIC IMPRESSIONS (DSM-IV):

*AXIS I:*      No diagnosis.
*AXIS II:*     No diagnosis.
*AXIS III:*    Per inmate self-report: Status post bilateral knee arthroscopy, gastric irritation.
*AXIS IV:*    Psychosocial stressors: incarceration.
*AXIS V:*     GAF = 85 (absent or minimal symptoms).

Inmate Dang is currently programming within the general population. He is not currently involved in any mental health treatment activities, nor is taking any psychotropic medications. Because he does not have a major mental disorder or personality disorder, the issue of prognosis is inapplicable.

### XIII.    REVIEW OF LIFE CRIME:

Inmate's version of offense/assessment of causative factors.

Inmate Dang was convicted of PC 209(b) Kidnap for Robbery With Use of a Firearm, PC 12022(a)(1); PC 212.5(a) First Degree Robbery, Armed, PC 12022(a)(1). His sentence was life plus 16 years. His MEPD is 12/30/06.

*DANG, HUY KHANH*
*CDC NUMBER: H-40124*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE FIVE*

He states that at the time of these offenses, he had dropped out of school, ran away from his aunt's house where he had been living, and was living with friends. He states that some of his friends talked him into participating in the robbery of a residence where gambling was being conducted. He says he was not thinking straight, and when his friends asked him, he just agreed. He states that they all went to the house and started gambling. He denies that he himself had a gun. He states that at one point, his friends then stood up, drew guns, and started to do a robbery of the people there. He states that after they actually started the robbery, he began to realize that he had made a mistake, but didn't know what he could do at the time. He states that he followed the robbers outside after they took the money. They all started to run away. He states that in regard to the kidnapping, he came along after his companions had already pulled a gun, threatened the victims, and hit the male victim. He says he jumped into the back seat of the car. When asked, he denies that he ordered the female victim back into the car. According to the POR, when the finally took off, the girlfriend was not in the vehicle, only the male victim. He states that one of his companions ordered the male victim to drive. He states that he told his companion this wasn't going to work, and to stop and let the victim out. He states eventually the car did stop and the victim got out.

When asked why he thought he participated in these crimes, he states that he was just young, stupid, and listened to the wrong people. He states he wished he had listened to his aunt instead of to his friends, and he not let himself be talked into doing it. With regard to the actual offense itself, he states that he was just scared and trying to get away and not thinking clearly when he joined his companions in the car. He states that he is now older and knows right from wrong, and that no one is going to talk him into doing something stupid. He states that if he could do things over again, he would never have left Hawaii.

He states he realizes that the victims were scared during the commitment offense. He states that he is glad they weren't harmed, but feels bad for them.

I would concur with inmate Dang's assessment of the causative factors in this crime, which included an inability to resist pressure from friends, an inability to foresee consequences, and evidently little appreciation for right vs. wrong.

*DANG, HUY KHANH*
*CDC NUMBER: H-40124*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE SIX*

XIV.   <u>ASSESSMENT OF DANGEROUSNESS</u>:

    *A.*    Within a controlled setting, this inmate has not demonstrated any dangerous behavior. He has not received any aggressive disciplinary articles. Therefore, his violence potential in that setting is minimal.

    *B.*    If released to the community, his violence potential is estimated to be low in comparison with the average inmate, probably no greater than the average citizen. He did not have a history of criminal offenses prior to the commitment offense, and does not have a history of subsequent behavior problems while incarcerated. He expresses an appropriate degree of insight and remorse.

    *C.*    Significant risk factors/precursors to violence: As noted, these included youthful susceptibility to peer pressure, inability to foresee consequences, and only a vague sense of right vs. wrong. However, in the 20 years since this offense, he has managed to stay clear of any behavioral problems, suggestive of an ability to resist negative peer influences, to appreciate consequences, and to distinguish right from wrong. Therefore, it appears that the same risk factors/precursors to violence that applied at the age of 19 no longer apply at the age of 34.

XV.   <u>CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS</u>:

There are no recommendations from a mental health standpoint at this time.

*Lance Portnoff, Ph.D.*
*Staff Psychologist*
*Correctional Training Facility, Soledad*

*DANG, HUY KHANH*
*CDC NUMBER: H-40124*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE SEVEN*


*B. Zika, Ph.D.*
*Senior Supervising Psychologist*
*Correctional Training Facility, Soledad*


*LAP/gmj*


*D: 05/08/06*
*T: 05/09/06*


*C:\Documents and Settings\gjorgensen\My Documents\00 - BPT REPORTS - 2006\DANG, HUY   H-40124   05-06*
*PORTNOFF.doc*

EXHIBIT D

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In re

Huy Dang

On Habeas Corpus

_____/

No.

4 Crim _E 042652_____

San Bernardino County Superior Court
Case No. SWH559123

## PETITION FOR REVIEW

After Decision by the Court of Appeal,
Fourth Appellate District.

Huy Dang, H402124
Petitioner In Pro Se
P.O. Box 689
Soledad, CA 93960-0689

# TABLE OF CONTENTS

**PAGE**

PETITION FOR REVIEW ........................................................... 1.

QUESTIONS PRESENTED ........................................................ 1.

NECESSITY FOR REVIEW ...................................................... 2.

ARGUMENT I

    THE BOARD OF PRISON TERMS DEPRIVED PETITIONER OF HIS
FEDERALLY PROTECTED LIBERTY INTEREST AND VIOLATED
HIS 5TH, 6TH, AND 14TH AMENDMENT CONSTITUTIONAL RIGHT
TO DUE PROCESS BY DENYING HIM PAROLE BASED ON THE
UNCHANGING FACTS OF THE OFFENSE, AFTER IGNORING THE
EVIDENCE OF HIS REHABILITATION PROGRAMMING AND
CONTINUED EXEMPLARY BEHAVIOR WHILE IN PRISON ................. 3.

    A.   Introduction ................................................................. 3.

    B.   The Board's Decision To Deny Parole Was Not Support By Evidence
Having Indicia Of Reliability ........................................... 4.

    C.   The State Parole Authority Mathematically Demonstrates Systematic
Bias In Their Decision Making, By Denying Parole Release To
Approximately 99% Of Appearing Inmates. ........................ 5.

CONCLUSION ...................................................................... 6.

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In re                  )

                     )

      Huy Dang        )

                     )

                     )

On Habeas Corpus    )

                     )

No.

4 Crim _E 042652_

San Bernardino County Superior Court
Case No. SWH559123

## PETITION FOR REVIEW

**TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUDGES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA.**

Petitioner Huy Dang petitions this court for review following the decision of Court of Appeal,

Fourth Appellate District, filed in that Court on _4 - 4_____, 2007. A copy of the

opinion of the Court of Appeal is attached hereto as Exhibit A.

### QUESTIONS PRESENTED

1.     Can the California Parole Board deprive a prisoner of their federally protected liberty

interest by denying parole based on the immutable facts of a 15 year old commitment offense whose

crime factors reflect the minimum necessary to support conviction, when no actual physical

violence was inflicted during the offense, when the prisoner has been disciplinary free for an

extended period, has participated in rehabilitation type programs while in prison, has an overall

positive program, minimal or no criminal conduct (convictions) of an assaultive or any nature, and

positive CDCR Counselor and psychological evaluations?

2.     Does the State's denial of parole release to 99%+ of appearing inmates over the past fifteen

years reflect both a constitutional application of Penal Code § 3041, subsections (a) and (b), and

conformity with this Court's standard in In re Rosenkrantz (2002) 29 Cal.4th 616, 683, that the Board shall normally grant parole on an overall basis?

## NECESSITY FOR REVIEW

A grant of review and resolution of these issues by this court are necessary to secure uniformity of decision and to settle important questions of law. The need for uniformity of decision is demonstrated by comparison of this case with those wherein the crime circumstances such as the instant kidnap-robbery crime fails to provide the necessary evidence to support parole denial in light of the minimally necessary standard, precluding its use to support a 'parole' denial decision. Petitioner respectfully submits that viewing the below case decisions for more grave offenses with his crime factors demonstrates the lack of uniformity in application of the due process standard depriving Petitioner of his federally protected liberty interest. See In re Lee (2006) 143 Cal.App.4th 140; In re Weider (2006) 145 Cal.App.4th 570; In re Elkins (2006) 144 Cal.App.4th 475. This case also provides this Court with an opportunity to determine if by denying parole release to approximately 99% of appearing inmates over the past decade the state is normally granting parole release as required by In re Rosenkrantz, supra, 29 Cal.4th at 683 and the California parole scheme, or does the denial of parole percentage during that period mathematically reflect a factual historical bias against parole depriving appearing inmates of a federally protected liberty interest.

In sum, Petitioner respectfully submits, that given the passage of time in this case, "some evidence" having the necessary state and federal indicia of reliability cannot support the Board's offense findings in this matter as required by the United States Constitution, Fifth and Fourteenth Amendments, the California Constitution, Article I, Section 15, and applicable state and federal case rulings, given the minimum circumstances of the instant life term offense.

2

## ARGUMENT I

THE BOARD OF PRISON TERMS DEPRIVED PETITIONER OF HIS FEDERALLY PROTECTED LIBERTY INTEREST AND VIOLATED HIS 5TH AND 14TH AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS BY REPEATEDLY DENYING HIM PAROLE BASED ON THE UNCHANGING FACTS OF THE OFFENSE, AFTER IGNORING THE EVIDENCE OF HIS REHABILITATION PROGRAMMING AND CONTINUED EXEMPLARY BEHAVIOR WHILE IN PRISON.

### A. Introduction

On June 1, 2006, Petitioner appeared before the Board of Prison Terms for parole consideration and was found unsuitable for parole based on the unchanging circumstances of his offense, conduct and his alleged unstable social history – because Petitioner's family left Viet Nam to come to the United States. He received a two (2) year parole denial. On January 12, 2007, Petitioner filed a petitioner for writ of habeas corpus in the San Bernardino County Superior Court, case number SWH559123. On February 5, 2007, the Superior Court summarily denied that petition, without providing a reasoned decision. (See Exhibit B.)

In 1991, Petitioner was convicted of kidnap-robbery and other robbery offenses. Fleeing the scene of a robbery on foot, Petitioner and his crime partner came upon a couple exiting their car. Telling the woman to leave, they told the male to drive them out of the neighborhood. Three blocks later they told the driver to stop and to leave the car. Prior to this they had been robbing a private (illegal) gambling house, and fled when they believed the police had been alerted. The Board decided his crime was carried out in a manner which demonstrates callous disregard for human suffering, that the motive was trivial, that Petitioner kidnapped two persons, that this was a home invasion crime, and that they planned the robbery, and on that basis denied parole.

Petitioner has been disciplinary free for over 13 years, earned his G.E.D., has a favorable psychological report, has parole plans, will be deported upon release, and has attended NA/AA. Petitioner also has CDC Psychological Evaluation Report findings that if released to the community

3

he has a "low" violence potential.  Petitioner's uniform term is a Cal. Code Regs., tit. 15, § 2285 one of 8-10-12 years versus the eleven (9 actual plus 2+ credit years) he has served on his life term.

A review of the factors in this case will also show the board effected its denial result by declaring factual evidence not in the record to support its contentions and by relying on baseless allegations which do not and cannot demonstrate that petitioner is currently an unreasonable threat to public safety if released.

The details of this case are more fully developed in the appellate writ which this court reviewed as a matter of procedure as defined in the California Rules of Court.

**B.  The Board's Decision to Deny Parole was not Supported by "Some Evidence" Having An Indicia of Reliability Given the Passage of Time Since the Crime Occurred.**

In Biggs v. Terhune, supra, at p. 914, a case with substantially more egregious situational factors and a prison performance record analogous to this Petitioner's, the court cited Greenholtz v. Nebraska Penal Inmates (1979) 442 U.S. 1, 7, and McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895, 903 and geld that "[b]ecause the "California parole scheme [Penal Code § 3041(b)] vests in every inmate a constitutionally protected liberty interest" and then held "protected by the procedural safeguards of the Due Process Clause," "some evidence" having an indicia of reliability  must underlay every Board decision, citing Jancsek v. Oregon Board of Parole (9th Cir. 1987) 833 F.2 1389.

Numerous state and federal decisions have recently held that when a prisoner such as Petitioner has behaved in a disciplinary free manner over a long term, in this case over 13 years, a Board finding denying parole based on the immutable facts of the prisoner's criminal conduct or prior criminal history would be devoid of evidence, since the predictive value of these factors would have become nil if the prisoner has demonstrated rehabilitation and remained disciplinary  free for an extended period, as in this case.  See In re Lee, supra; In re Elkins, supra; Sanchez v. Kane (C.D.

4

Cal. 2006) 444 F.Supp.2d 1049; Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063.

Cases with substantially more violent crimes than that committed by this Petitioner.

Petitioner therefore respectfully submits that in accordance with these recently announced federal due process standards, given his thirteen (13+) years of disciplinary free prison performance, his on-going positive programming, the substantially lesser gravity of his offense, and his lack of a previous criminal history, the immutable facts of his crime cannot provide the some evidence needed to support a parole denial decision. Therefore, the Board's reliance on the gravity of his offense from over fifteen (15+) years past to deny parole is completely contrary to the evidence before the Board, thus their findings and decisions were without any reasoned factual basis, i.e. devoid of evidence, and as a result arbitrary and capricious, depriving Petitioner of his state and federal right to due process.

## C. The State Parole Authority Mathematically Demonstrates Systematic Bias in Their Decision Making Process by Denying Parole to Over 99%+ of Appearing Inmates.

Petitioner respectfully submits that a review of the statistical data, which can be obtained and provided upon authorized discovery, will demonstrate the State routinely denies parole release to approximately 99%+ of appearing inmates contrary to this Court's holding in In re Rosenkrantz, supra, 29 Cal.4th at 683, and contrary to the standard initially noted in Biggs v. Terhune, supra, at 916-917. Further, Petitioner submits a detailed review of case record history will show the state parole authority routinely declares the offenses committed by the approximately 99%+ of inmates denied parole as having been carried out in an "especially heinous, atrocious, or cruel," i.e. particularly egregious manner, or by using equivalent wording, regardless of the circumstances of the crime. It is impossible for 99% of crimes committed which carry an indeterminate sentence to be particularly egregious, especially the offense in this case. (See In re Ernest Smith (2003) 114 Cal.App.4th 343 holding that in California parole is the rule, i.e. the norm, and not the exception;

5

and that only especially grave, i.e. particularly egregious, crimes can be used to support a parole denial decision. See In re Rosenkrantz, supra, 29 Cal.4th 616 holding a "particularly egregious" crime is one with elements of a more serious crime not found by a jury. Factors not present or applicable in this case.

## CONCLUSION

For the above reasons, Petitioner requests this Court grant review.

Date: _4 - 11_____, 2007

Respectfully submitted

_Huy Dang_

Huy Dang,
Petitioner In Pro Per

6

EXHIBIT A

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

### ORDER

> FILED
>
> APR   4 2007
>
> COURT OF APPEAL, FOURTH DISTRICT

In re

HUY DANG

on Habeas Corpus.

E042652

(Super.Ct.Nos. SCR55894 &
SWHSS9123)

The County of San Bernardino

THE COURT

The petition for writ of habeas corpus is DENIED.

McKINSTER

_____
Acting P.J.

cc:    See attached list



1201  U.S. POSTAGE  PB 2 2 2 9 7 4 3
8162  $00.390  APR  04  07
8059  92501

CLERK'S OFFICE
C O U R T  O F  A P P E A L
FOURTH APPELLATE DISTRICT
DIVISION TWO
3389 TWELFTH STREET
RIVERSIDE, CA 92501

EXHIBIT B

1

2

3

4

SUPERIOR COURT
COUNTY OF SAN BERNARDINO
Department No. S-8
351 North Arrowhead Avenue
San Bernardino, California 92415-0240

COPY

FILED- San Bernardino District
SUPERIOR COURT
SAN BERNARDINO COUNTY

FEB 0 5 2007

By _Bismayn Morphy_
Deputy

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO

### SAN BERNARDINO DISTRICT

In re the Petition of

HUY DANG,

For Writ of Habeas Corpus.

)
)
)
)
)
)
)

Case No. SWHSS 9123

ORDER DENYING PETITION FOR WRIT
OF HABEAS CORPUS

The petition of HUY DANG for Writ of Habeas Corpus was filed in this court on January 12, 2007.

Therein, Petitioner contends that:

1. The parole board improperly denied him parole.

Pursuant to the record supplied by Petitioner, the parole board decided that he was unsuitable for parole because the commitment offense was especially cruel and violent and that his propensity for violence to the community outweighed his prison conduct record. It is clear that the board had "some evidence" to justify its decision to deny parole.

The petition is denied.

Dated this 5th day of February, 2007.

JOHN P. WADE

JOHN P. WADE
Judge of the Superior Court

-1-

Court of Appeal, Fourth Appellate District, Div. 2 - No. E042652
**S151815**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re HUY DANG on Habeas Corpus

The petition for review is denied.

SUPREME COURT
**FILED**

JUN 2 0 2007

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE
Chief Justice





$ 04.90°
0004229813   JUL 24 2007
MAILED FROM ZIP CODE 93960

67-3845-SBA

Clerk of the Court
U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

LEGAL MAIL

Liang, H. 40124
P.O. Box 689 YW 322L
Soledad, CA 93760-0689

Envelope 2 of 3



Clerk of The Court
U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

E-Filing

LEGAL MAIL

Hul Doug, H-40124
P.O. Box 689, YW-3891
Soledad, CA 93960-0689

Envelope 3 of 3