IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HUY DANG,

    Petitioner,

v.

B. CURRY,

    Respondent.

No. C 07-03845 SBA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Huy Dang, an inmate at the Correctional Training Facility in Soledad, California, filed this pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in which he challenges the denial of parole by the California Board of Parole Hearings (BPH) in 2006. The matter is now submitted for the Court's consideration of the merits of the petition. For the reasons discussed below, the petition is DENIED.

## PROCEDURAL BACKGROUND

In 1992, Petitioner was convicted by a jury in San Bernardino County Superior Court of one count of kidnaping for robbery, one count of residential burglary, and sixteen counts of residential robbery, all while armed. (Pet. at 2.) He was sentenced to a state prison term of sixteen years plus life in prison with the possibility of parole. (Id.) On June 1, 2006, the BPH conducted Petitioner's first parole consideration hearing, after which it found that Petitioner was not suitable for parole because he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. (Resp't Ex. 1, Ex. A at 79.)[1]

Petitioner filed a habeas petition in the San Bernardino County Superior Court, which was denied on February 5, 2007. (Resp't Exs. 1 & 2.) Thereafter, Petitioner filed a habeas petition in the

---

[1] Respondent's Exhibit 1 is Petitioner's habeas petition to the state superior court. Attached as Exhibit A to that petition is a full transcript of the parole hearing.

state appellate court, which was denied on April 4, 2007. (Resp't Exs. 3 & 4.) On April 13, 2007, Petitioner filed a habeas petition in the state supreme court, which was denied on June 20, 2007. (Resp't Exs. 5 & 6.)

Petitioner filed the instant petition on July 26, 2007, raising the following claims: (1) the denial of parole violated his right to due process because it was based on the immutable facts of his commitment offense; (2) the California courts applied the wrong standard of review in denying Petitioner's due process claim; and (3) because the BPH is permitted to make factual findings in denying parole, their decision violates Petitioner's Sixth Amendment right to a jury.[2] On September 8, 2008, Respondent's motion to dismiss was granted as to the Sixth Amendment claim, and Respondent was ordered to show cause why the petition should not be granted based on Petitioner's remaining claims. Respondent has filed an answer, along with a supporting memorandum and exhibits, and Petitioner has filed a traverse.

## STANDARD OF REVIEW

### I. AEDPA

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes

---

[2] At the end of the petition, Petitioner also argues that the sentencing judge already determined his level of dangerousness to the public. It is not clear whether this is intended as an independent claim for relief, and if so, how it pertains to the denial of parole. In any event, it does not state cognizable basis for federal habeas relief because it does not assert that the denial of parole violated any federal constitutional right or other federal law. See 28 U.S.C. § 2254(a) (providing for habeas relief based on violation of federal law); Engle v. Isaac, 456 U.S. 107, 119 (1982) (same).

of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004), cert. denied, 546 U.S. 963 (2005). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

### A. Review of Parole Suitability Decisions

Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

### B. Section 2254(d)(1)

Challenges to purely legal questions resolved by the state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards. See Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds; Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

#### 1. Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the

3

state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Id. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

4

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The "objectively unreasonable" standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them." Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### C.  **Section 2254(d)(2)**

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and

5

made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**II.      California Law Governing Parole**

A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date . . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Pen. Code § 3041(a). Significantly, that statute also provides: The panel shall set a release date,

> unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Id. § 3041(b).

One of the implementing regulations, Title 15 of the California Code of Regulations, section 2401 provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public." The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a).

In making its determination, the parole board may consider "[a]ll relevant, reliable information available," including,

> the circumstances of the prisoner's social history; past and present mental state;

> past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in finding of unsuitability.

Id. § 2402(b).

Circumstances tending to show unsuitability for parole include the nature of the commitment offense, and consideration of whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Id. § 2281(c). This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id. Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. See id.

Circumstances tending to support a finding of suitability for parole include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. See id. § 2281(d).

The regulations also contain a matrix of suggested base terms that prisoners with indeterminate sentences should serve before they are released on parole. The matrix provides three choices of suggested "base terms" for several categories of crimes. See 15 Cal. Code Regs. § 2403. If, as in Petitioner's case, the base offense is one count of first-degree murder with the use of a dangerous weapon (firearm), the matrix of base terms ranges from a low of 29-31 years, to a high of

7

30-32 years, depending on some of the facts of the crime.[3] See id. § 2403(b). Although the matrix is to be used to establish a base term, this occurs only once the prisoner has been found suitable for parole. See id. § 2403(a).

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. In re Dannenberg, 34 Cal.4th 1061, 1070-71 (2005).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raise "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets and parenthesis in original). Indeed, the very regulation that includes the matrix states that "[t]he panel shall set a base term for each life prisoner who is found suitable for parole." 15 Cal. Code Regs. § 2403(a) (emphasis added). "[T]he Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Dannenberg, 34 Cal. 4th at 1071 (emphasis added).

The California Supreme Court's determination of state law is binding in this federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629 (1988).

//
//

---

[3] One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture." Each of the choices are further defined in the matrix. See CAL. CODE REGS. tit. 15, § 2403(b).

# DISCUSSION

## I. Due Process

The following claims remain in the petition: (1) the denial of parole violated Petitioner's right to due process because it was based on the immutable facts of his commitment offense; and (2) the decision in In re Dannenberg, 34 Cal.4th 1061, 1102 (2005), authorizes a standard of review that eviscerates the federal due process standard requiring that the denial of parole be supported by at least "some evidence."

"In analyzing the procedural safeguards owed to an inmate under the Due Process clause, [a court] must look at two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural safeguards." Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir. 2003). The second prong of this test is satisfied if (1) the inmate has been afforded an opportunity to be heard and, if denied parole, informed of the reasons underlying the decision and (2) "some evidence" supports the decision to grant or deny parole. See Sass, 461 F.3d at 1129 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).

### A. Protected Liberty Interest

Respondent argues as an initial matter that Petitioner has no federally protected liberty interest in parole. This argument has been rejected by the Ninth Circuit. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006) ("California inmates continue to have a liberty interest in parole after In re Dannenberg."). Thus, under Sass, Petitioner was entitled to the protections of due process at his 2006 parole suitability hearing.

### B. Opportunity to Be Heard and Reasons for Denial

There is no dispute that Petitioner fully participated in his 2004 parole suitability hearing, as evidenced by the transcript of that hearing. (Resp't Ex. 1, Ex. A.) Throughout the hearing, Petitioner was given the opportunity to make comments and/or objections in response to the BPH's statements, clarify any misunderstandings and provide statements regarding his parole eligibility. (Id.) In addition, the BPH laid out detailed reasons for denying Petitioner parole, which are

discussed further below. (Id.) Consequently, the record is clear that the BPH did not violate Petitioner's due process right to have an opportunity to be heard and to be given the reasons for the denial of parole.

### C. "Some Evidence"

Petitioner's first claim asserts that the denial of parole violated due process because it was based upon Petitioner's commitment offense. This claim can be construed as a claim that there was not sufficient evidence that he would endanger the public if released on parole to satisfy the "some evidence" standard of due process.

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457).

It is now established under California law that the task of the BPH is to determine whether the prisoner would be a danger to society if he or she were paroled. In. re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

In several cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In Biggs, the court explained that the some evidence standard may be considered in light of the Board's decisions over time. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an

unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." 334 F.3d at 915-17. Although the Biggs court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." Id. at 916.

The Sass court criticized the decision in Biggs: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Sass determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. Id. (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, Sass does not dispute the argument in Biggs that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. Id. Also, noting that the parole board in Sass and Irons appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." Id. (citing Biggs, 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

That is not what happened here, however. In denying parole, the BPH cited the "especially cruel and callous" nature of the crimes, their "trivial" motive, and Petitioner's failure to adequately participate in self-help and job-training programs. (Resp't Ex. 1, Ex. A at 79-83.) These are factors

11

that "tend to indicate unsuitability for parole" under California regulations. 15 Cal. Code Regs. § 2402. The BPH commended Petitioner not having any prior record, for earning his GED in prison, for his prison disciplinary record of eight years since any minor disciplinary write-ups and thirteen years since any major ones, a positive psychological report, and his performance at his prison job assignment. (Id. at 84-85.) Nevertheless, the BPH found that these positive factors were outweighed by the factors indicating unsuitability. (Id. at 88-89.)

The BPH relied upon the facts of the commitment offenses set forth in the opinion of the California Court of Appeal. (Id. at 18-24.) Petitioner and other members of the "Black Dragon" gang conducted a "home-invasion" robbery and subsequent kidnaping. (Id. 80-81.) After breaking into a home, they robbed approximately fifteen people at gunpoint of money and jewelry, injuring one of them. (Id.) After the robbery, Petitioner and his cohorts kidnaped two other people at gunpoint, struck one of them in the head with a pistol, and used their car to flee. (Id.) Petitioner was personally involved in the initial planning of the crime, he used a car he was borrowing to help carry out the home-invasion robbery, he gathered the money and jewels and later hid them, he participated in the kidnaping of the victims, and he was in the car that was used to try to flee. (Id.) As the crimes were well-orchestrated, involved violence and the threat of further violence against a large number of victims, and were carried out for relatively trivial purpose of pecuniary gain, the BPH could reasonably conclude from these circumstances that the crimes were committed in an "especially cruel and callous manner." Besides the facts of the commitment offenses, there was evidence that Petitioner had been involved with a gang that was engaged in criminal activity, that he had not taken advantage of self-help programs to teach him any marketable skills while in prison. The BPH could reasonably conclude that the circumstances of the commitment offenses as well as Petitioner's failure to sufficiently participate in self-help and job-training programs outweighed the positive factors.

Consequently, the record of the 2006 parole hearing demonstrates at least "some evidence" that Petitioner would pose a risk of harm to society if released and that parole should be denied. Moreover, the concern expressed in Biggs, that after passage of enough time such a factor would

12

cease to amount to "some evidence" on its own, is not triggered here for two reasons. First, the BPH did not deny parole solely because of the unchanging factor of the nature of Petitioner's offense. Second, this was Petitioner's first parole hearing, so parole was not continuously being denied. Accordingly, the state court's rejection of Petitioner's due process claim was not contrary to or an unreasonable application of the "some evidence" standard, and Petitioner's due process challenge to the denial of parole is DENIED.

### D. Dannenberg Standard

Petitioner claims that decision in In re Dannenberg, 34 Cal.4th 1061, 1102 (2005), authorizes a standard of review for parole determinations that contradicts the "some evidence" standard. Specifically, he points to the holding in Dannenberg that "[w]hile the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense"). Petitioner argues that allowing parole to be denied where the sole evidence of unsuitability are facts of the commitment offense that are more than the minimum necessary to convict, the California Supreme Court has contradicted the Ninth Circuit's interpretation of the "some evidence" standard, under which the "indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." Irons, 505 F.3d at 854; see also Biggs, 334 F.3d at 917 n.5.

Even if Petitioner's argument as to the standard of review by the California courts were correct, this does not warrant federal habeas relief in this case. As explained above, parole was not denied solely based on the facts of the commitment offense in this case, nor has Petitioner been

13

1 continually denied parole, and as a result, this case does not fall within the circumstances
2 contemplated by Biggs and Irons. Consequently, this claim is DENIED.

### III. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability (COA) in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). However, the Ninth Circuit has made clear that a state prisoner challenging the BPT's administrative decision to deny a request for parole need not obtain a certificate of appealability. See Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005). Accordingly, any request for a COA is DENIED as unnecessary.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. In addition, any request for a COA is DENIED as unnecessary. The Clerk of the Court shall enter judgment in accordance with this Order, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: 3/8/10

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

HUY DANG,

    Plaintiff,

v.

Case Number: CV07-03845 SBA

**CERTIFICATE OF SERVICE**

P:\PRO-SE\SBA\HC.07\Dang3845.denyHC.wpd     14

| | |
|---|---|
| 1 | B. CURRY et al, |
| 2 | Defendant. |
| 3 | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 10, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Huy Dang H-40124
Correctional Training Facility - Soledad
P.O. Box 689
Soledad, CA 93960-0689

Dated: March 10, 2010

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk